May Term,
1834.

HOLLINGS-
WORTH
v.
BATES.

HOLLINGSWORTH v. BATES.

*A.* being indebted to *B.* in the sum of 72 dollars, agreed to sell him a horse for 45 dollars or such sum as *C.* should determine; and the horse was accordingly delivered to *B.,* but *C.* refused to fix the price. *B.* kept the horse three days and offered him for sale, when he was levied on by virtue of an execution against *A.* *Held,* that the horse was not subject to the execution, the previous sale of him to *B.* at 45 dollars being complete.

Tuesday,
May 27.

ERROR to the *Union* Circuit Court.

M'KINNEY, J.—This is an action of trespass brought by *Hollingsworth* against *James Bates* and *Nathaniel Brown,* to recover the value of a horse.

To the declaration the defendants pleaded,—1. The general issue; 2. That before the time in the declaration mentioned, when, &c. on, &c. *William Brown,* administrator of, &c. recovered a judgment against *Isaac Jones* in debt, before a justice of the peace of *Union* county, for the sum of 75 dollars and 75 cents, with interest, &c., on which judgment *James Bates,* on, &c. entered himself replevin-bail; that on, &c. the justice of the peace issued a writ of *fi. fa.* on said judgment, directed to the defendant *Brown,* a constable, &c.; that he returned it endorsed "no property found to levy on;" that judgment on *sci. fa.* was rendered against *Bates,* the replevin-bail, who paid the judgment; that on, &c. before the time when, &c. *Bates* caused an execution of *fi. fa.* to be issued on the judgment against *Jones,* for his use; that this execution was also placed in the hands of the defendant *Brown,* constable, &c.; that he afterwards and before the return day, on, &c. seized and took in execution as the property of *Jones,* the horse in the declaration mentioned; and that this is the same trespass complained of, &c.

*Brown* having died, his death is suggested on the record. The plaintiff in his replication to the second plea says, that the property levied on by the officer was not the property of *Jones,* but was the property of the plaintiff. The issues were tried by a jury, and a verdict found for the defendant. A motion for a new trial was made and overruled, and judgment rendered on the verdict.

Three errors are assigned:—1. The rejection of *Jones* as a witness; 2. The refusal to charge the jury as requested by the plaintiff, and in giving a charge contrary to law; 3. The refusal to set aside the verdict.

The testimony upon which the instructions were predicated, is made a part of the record. It seems that the horse in controversy was levied on by virtue of a *fi. fa.* as the property of *Isaac Jones;* that the plaintiff purchased the horse of *Jones* at 45 dollars, or such price as *James Bates* should say the horse was worth, in part payment of a note for 72 dollars, which the plaintiff held on *Jones;* that the plaintiff and *Jones* called on *Bates*, who refused to fix the value of the horse, and that on such refusal the plaintiff concluded to take the horse at 45 dollars, had accordingly taken him home, and had offered to sell him; that the plaintiff's object in having the horse valued by *Bates* was, that he might get him at 40 dollars; that the plaintiff bought the horse on the 13th day of *November*, 1830, and had him in possession three days before he was levied upon; that the levy was made on the 15th day of *November*, 1830, the day the execution in favour of *Bates* issued; that no credit was endorsed on the note held by the plaintiff against *Jones*, but that he had sent it to *Cincinnati* to *Jones*, after the sale of the horse by the constable, with a view to a compromise with *Jones*.

The instructions asked and refused are the following:—First, That if it was proved that the plaintiff held a note against *Jones* for 72 dollars, at the time of getting the horse into his possession, and if *Jones* had agreed to sell the horse to the plaintiff at the sum of 45 dollars, or such sum as *Bates* would place on him, and then delivered the horse to the plaintiff, who took him home and kept him three days after the refusal of *Bates* to name the price, the sale was good, the title vested in the plaintiff, and the jury should find for him. Secondly, That if *Jones* delivered the horse to the plaintiff in part payment of said note, the sale was a good one, although nothing was said concerning the price of the horse. These instructions were refused; but the Court charged the jury, that if *Jones* sold the horse to the plaintiff in part payment of said note, at the sum of 45 dollars, or such sum as *Bates* should name, and *Bates* refused to fix the price, the sale would be imperfect, although the horse was delivered to the plaintiff, and kept by him until he was taken in execution by *Bates*, and the title to the horse would not vest in

the plaintiff; but if the jury believed that the plaintiff and *Jones* afterwards agreed upon the value of the horse, the sale would be good.

Proceeding in the order in which the errors are assigned, we will first notice the rejection of *Jones* as a witness. It is merely stated in the bill of exceptions that *Jones* was offered by the plaintiff as a witness, and rejected by the Court. If *Isaac Jones*, the vendor of the horse and the defendant in the execution, was intended, and the ground of his rejection, as in argument urged, was interest, a question would be presented not without importance. We are however confined to the record, and as it does not distinguish the witness and show the reason of his rejection, the presumption must be indulged that the Circuit Court was correct.

In determining whether there was error in refusing the instructions asked by the plaintiff, and charging the jury as was done, the first question to be settled is, To whom, provided the testimony before us was believed by the jury, did the horse belong—to *Isaac Jones*, the execution defendant, or to the plaintiff in this suit? *Jones*, three days before an execution issues against him for the use of *Bates*, sells to *Hollingsworth* a horse at 45 dollars, or for such price as *Bates* shall fix. Here we will inquire, For whose benefit was the reference to be had to *Bates*? Exclusive of positive testimony that it was for *Hollingsworth's*, that conclusion, without confirmatory acts, must be deduced from the nature of the contract. If thus deducible from the contract, the sale to the plaintiff was perfect, being accompanied by an essential ingredient to its validity, delivery. The parties stood in a different relation to each other. The sum of 45 dollars of the amount due on the note was discharged, and the plaintiff in the enjoyment of the possession of, and right of *Jones* to the horse. Contracts are express or implied, and either are equally available in law. The former, such as we consider that under examination to be, are created by the parties themselves. If such contract oppose no salutary provision or be not in conflict with any principle of the common law, interposed for the prevention of detriment to the community by example or otherwise, it will be construed agreeably to the intention of the parties, derived either from acts or language, and enforced. Treating the present contract as entirely legitimate, and adopting the rule of construction noticed, intention of the parties, it is apparent that

the sale was perfect from the fact that the plaintiff, after *Bates'* refusal to value the horse, without opposition from *Jones*, took the horse home with him, treated it as his property, offered it for sale, and retained it three days before it was levied on. No claim is made by *Jones*, no right asserted by him, none could have been, consistently with the contract. If it were necessary to consider this as an implied contract, founded on the delivery by *Jones* to the plaintiff of the horse, and the plaintiff's subsequent acts of ownership, we should arrive at the same conclusion—that *Jones* had parted with his interest in the property to the plaintiff, and was, by operation of law, entitled to its value. It is unnecessary, when this position is established, to deduce by reasoning a legal consequence, the exemption of the property in controversy from the execution. It is urged, however, that this sale was fraudulent. To this we answer, that if it were, it is not shown by the testimony. The reference to *Bates*, a judgment creditor of *Jones*, and the whole transaction as disclosed, strongly repel the idea of its existence.

It seems admitted that the plaintiff has not entered a credit on the note held against *Jones*, for the price of the horse; and that since the sale of the horse on execution, he has sent the note to *Cincinnati* to *Jones*, with a view to a compromise. This does not alter or affect the contract. Although the credit be not endorsed, the whole amount of the note cannot be collected, as 45 dollars of it have been paid. This is a question, however, for *Jones* and *Hollingsworth*. It is for them to settle it.

From this view of the case, it is obvious that the Circuit Court erred in refusing to give the instructions asked by the plaintiff, as well as in the charge it gave, and in not having granted a new trial.

*Per Curiam.*—The judgment is reversed, and the verdict set aside, with costs. Cause remanded, &c.

*J. Perry*, for the plaintiff.

*O. H. Smith*, for the defendant.